UNITED STATES BANICRUPTCY COURT
EASTERN DISTRICT OF MISSOURI

IN RE:

                                                          Case No.

WILMA AND THE MESSENGERS MINISTRIES,

                                                          Chapter 11
                     Debtor.

DISCLOSURE STATEMENT DATED
AUGUST 17, 2011

Wilma and the Messengers Ministries, the Debtor, submits the following Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code:

INTRODUCTION

Wilma and the Messengers Ministries, Debtor in possession under Chapter 11 of the Bankruptcy Code provide this Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code to all known claimants, creditors and security holders (hereinafter collectively "Creditors"). The purpose of the Disclosure Statement is to disclose that information deemed by the Debtor to be material, important and necessary for the Creditors to arrive at a reasonable informed decision in exercising their right to vote for the acceptance of Debtor's Plan of Reorganization, the Plan filed by Debtor as part of its Chapter 11 case. **The Court has set _____ for hearing on the approval of the Plan**. Creditors may vote on the Plan filling and mailing the enclosed Ballot to counsel for the Debtor:

    Rochelle D. Stanton
    745 Old Frontenac Square, Ste. 202
    Frontenac, MO  63131

As a creditor your vote is important. EXCEPT WHERE OTHERWISE STATED, THIS DISCLOSURE STATEMENT HAS BEEN PREPARED FROM INFORMATION SUBMITTED BY THE DEBTOR.

NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STAQTEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ANY CREDITOR'S ACCEPTANCE THAT ARE OTHER THAN AS CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY ANY CREDITOR IN ARRIVING AT ITS DECISION.

The information contained herein has not been subject to a certified audit. For that reason, Debtor is unable to make any warranties concerning the accuracy of the information contained herein, although reasonable efforts have been made to assure the accuracy of this Statement. The source of the information contained in the disclosure statement is Tax Returns filed by the Debtor, Profit and Loss Statements provided by Debtor's Certified Public Accountant, and Appraisal provided by qualified professionals, as well as projections provided by the Debtor.

The Court may, on the request of Debtor, confirm the Plan over the objections of holders of impaired claims provided that the Plan does not discriminate unfairly among classes, and if the Plan is fair and equitable with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

HISTORY AND DESCRIPTION OF DEBTOR'S FINANCIAL CONDITION

The majority of the facts in this case are uncontroverted. Debtor Wilma and the Messengers Ministries was, at all times herein relevant, the owner of a commercial building, donated in 12/2009 to Debtor. The Church is located in the County of St. Louis, and is presently valued at approximately $750,000. At the time the real property was donated, it was subject to a Secured Promissory Note and Deed of Trust in the total sum of $50,000.00. Property Taxes were due for tax years 2006 through 2010. Real Estate Tax was owed on the date the commercial property was donated to Debtor, and subsequent to acquiring the church real property, Debtor filed documents with the Internal Revenue Service and was recognized as a §503(c) non-profit religious organization. The Real Estate Tax debt due was a debt that was assessed prior to the date that the Church property was donated to this Debtor. Debtor will not be assessed real estate taxes in the future, except a small parcel of undeveloped common land directly east of the Church, which is subject to annual assessment of $1,200.00 at the present time. Nevertheless, Debtor owes tax for years prior to obtaining its present non-profit status, and the real estate subject to the tax was scheduled for tax sale in August of 2011, thus precipitating the necessity for Debtor's Chapter 11 Bankruptcy filing, to allow the Debtor the time and the opportunity to pay the amounts owed to the County Collector of Revenue.

During the course of this Chapter 11 case, it is the Debtor's intention to provide for an orderly repayment to the secured Creditors as part of its current donations and community programs. It is the Debtor's intention to pay ten percent of the obligations due to any unsecured Creditors. Debtor is unaware of any such Creditors at the present time.

FINANCIAL INFORMATION

The principal tangible assets of Wilma and the Messengers Ministries are as follows:

Real property located at:

    10192 Halls Ferry Road, St. Louis, Missouri valued by Debtor at $750,000.00;

Personal property consisting of:

1. Cash, Security Deposits and Bank deposits estimated by Debtor at $5,860.00;
2. Church Inventory, Religious Artwork, equipment, fixtures, furnishings, appliances,

       valued by Debtor at $16,400.00; and
3. 1997 Ford Econoline Van valued by Debtor at $3,000.00;

Debtor has no accounts receivable.

The principal liabilities of Wilma and the Messengers Ministries are as follows:

Note to **Chesterfield Mortgage Investors, Inc**. in the present amount of approximately $ 50,000.00 which is secured by a deed of trust on the real property located at 10192 Halls Ferry Road, St. Louis, Missouri.

Real Estate Tax Lien owed to **St. Louis County Collector of Revenue** in the present aggregate sum of approximately $329,393.44 which is secured by the commercial Real Property Church owned by Debtor.

Other general unsecured non-priority debt, in an unknown amount, believed to be $0.00.

Wilma and the Messengers Ministries has six part time contracted employees, and all wages are current to its employees at the present time.

## SUMMARY OF THE PLAN

### Class 1.

All administrative expenses as provided by 11 U.S.C. Section 503b including, but not limited to all compensation allowed to the attorneys, accountants and other professional persons employed by the Debtor, or otherwise rendering services of benefit to the Debtor, and all other debts and obligations incurred by the Debtor on a post-petition basis that are necessary or essential to the Debtor or its reorganization. All allowed claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2), ["gap" period claims in an involuntary case under § 507(a)(3),] and priority tax claims under § 507(a)(8)).

### Class 2.

- The claim of **Chesterfield Mortgage Investors, Inc**., to the extent allowed as a secured claim under § 506 of the Code.

### Class 3.

- The claim of **St. Louis County Collector of Revenue** to the extent allowed as a secured claim under § 506 of the Code.

### Claim 4.

All unsecured claims, including any and all deficiency claims, claims of secured creditors whose liens or security interests have been invalidated, deficiency claims, and claims arising from the rejection of executory contracts and leases as allowed under §502 of the Code.

### Class 5.

The interests of the Debtor in property of the estate.

**Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - Administrative Claims | This claim is Uimpaired. No such claims are owed at present. | |
| Class 2 - Secured Claims secured by Interests in real property owed to Chesterfield Mortgage Investors, Inc. | This claim is unimpaired. | Debtor shall continue to make monthly payments to lienholders beginning with the payments due April 1, 2011 and continuing thereafter in accordance with the terms of the secured instruments until such time that the debts are each paid in full. Except as expressly modified by the terms of this Plan, all terms, covenants and provisions of the any Note, Deed of Trust and any other instrument or document related to or executed in connection with any real property retained by Debtor shall remain in full force and effect and be binding upon the Debtor. |
| Class 3 - Secured Claims in real property | These claims are unimpaired. | Debtor shall continue to make monthly payments to the Collector of Revenue beginning with the payments due thirty days after Confirmation of Debtor's Chapter 11 Plan and continuing until such time that the debts are each paid in full. |
| Class 4 - General Unsecured Creditors | **The claims of unsecured non priority creditors are unimpaired as to all members within this class.** | Each holder of an allowed claim in Class 4 will be paid a sum equal to 100 percent of the amount of its allowed claim as of the date of filing, to be paid in deferred cash payments over a period not to exceed 60 months from the date of the confirmation order without interest. Such payments to begin after allowed claims of creditors in Class 1 through Class 3 have been paid in full. |
| Class 5 - The interests of the individual | This class of claims, if any, is | |

| | | |
|---|---|---|
| Debtor in the property of the estate | impaired, and any payment(s) due shall be paid after payment to creditors in classes One through Four. | |

## ADMINISTRATIVE EXPENSES ESTIMATED DURING PENDENCY OF CHAPTER 11 PLAN

The anticipated cost annually of administrative fees in order to comply with the requirements of the United States Bankruptcy Code are estimated as follows:

| | |
|---|---|
| U.S. Trustee Fees: | $ 2,500.00 |
| Attorney Fees: | 5,500.00 |
| Accountancy Fees: | 0.00 |

These fees and costs reflect a case requiring little administration after confirmation other than the preparation and filing of Profit and Loss Statement, monitoring of payments to classes of creditors, and managing correspondence among the parties, professionals retained by Debtor, and creditors of Debtor.

### U.S. TRUSTEE MATTERS

All quarterly fees owing to the United States Trustee and/or other administrative expenses in cash on the effective date of the plan shall be paid in full by the Debtor as such Debt becomes due and payable. This debt shall be classified as an administrative claim and will be entitled to priority of payment. Such payment shall be paid in cash, post-confirmation, pursuant to 28 U.S.C. §1930, as amended. Debtor will file with the U.S. Bankruptcy Court, with a copy to the Office of the U.S. Trustee, their Quarterly Operating Report every month following the filing of the Petition for Relief in Bankruptcy, and post-confirmation financial reports will be filed on a quarterly basis. Upon confirmation of the Chapter 11 Plan, the Office of the United States Trustee, Chapter 11 Trustee herein, is to be discharged of its trust pursuant to 11 U.S.C. §350.

### PENDING CLAIMS AND LITIGATION

There are presently no pending claims or litigation against Debtor filed before entry of the Order for Relief in Chapter 11.

### FUNDING OF THE PLAN

Funding for this Plan will come exclusively from internally generated funds. The Plan does not require any additional loans or capital infusions. Future wages and expenses are based on historical data and the future wages and business income, with periodic increases in wages as earned by Debtor.

## LIQUIDATION ANALYSIS

In the event that the Debtor' Plan of Reorganization is not approved by the creditors and confirmed by the Court, the alternative would likely be a dismissal of this Chapter 11 Bankruptcy Case. In the event of Chapter 7 liquidation, the following would be realized by the Chapter 7 Trustee:

| | |
|---|---|
| Real Estate | $750,000.00 (Debt estimated to be $379,393.44) |
| Non-Exempt Personal property | 25,260.00 |
| **Total:** | **$ 775,260.00** |

The expenses of administration of a Chapter 7 case of this type are estimated to be $88,528.00, which would leave a balance of $686,732.00 available for the payment of claims. The estimated total amount of claims secured by real and personal property payable to Class 2, 3, and 4 Creditors that would be allowed in the Chapter 7 case is 100% after surrender of the properties. The value of the real property owned by Debtor is based upon the value provided to Debtor based on the opinions of realtors Debtor had contacted in 2009 and 2010 to discuss refinancing of the debt owed against the real property.

In a Chapter 7 Case, all Classes of Claims would be paid in full.

## MANAGEMENT

The officers, directors, shareholders, insiders, or other persons in control of the Debtor and their respective annual salaries are as follows:

| | | | |
|---|---|---|---|
| Wilma and the Messengers Ministries | Pastors | Howard and Wilma Walker | Directors |

### STATUS OF CASE

This Chapter 11 case was filed by Debtor because Debtor is not eligible to be Debtor in a Chapter 13 Bankruptcy case. In the opinion of Debtor, all of its creditors will receive considerably more in this Chapter 11 case than they would have received had Debtor simply surrendered the Church assets to its creditors.

SUMMARY OF PROPOSED
PLAN OF REORGANIZATION

The Plan of Reorganization proposed by Debtor will pay secured claims in real properties that Debtor will retain in full. The plan will pay dividends totaling 100 percent of the unsecured claims as filed and allowed. The funds for implementing and carrying out the Plan will come from the Debtor's Church activities and Congregation donations. It is estimated that it will take approximately sixty months for Debtor to complete the proposed Plan.

CONCLUSION

As stated herein, the Debtor's Plan of reorganization contemplates that the Plan will be funded from the Community gifts and donations generated by Debtor. The Plan will be self-funding from internally generated income. The Plan will allow the Debtor to meet its secured and obligations in full and make payment at one hundred percent to its unsecured non-priority creditors. The Plan allows the Debtor to continue to generate income and therefore continue to pay its debts. Conversely, dismissal of this case would result in payment of all claims herein, but the services provided to the community would be lost. For the reasons stated herein, the Debtor strongly and firmly believes that acceptance of confirmation of its Plan is preferable to any other Plans or means available to this Debtor, and therefore urges acceptance of the Plan of Reorganization.

Dated and respectfully submitted this
\_\_\_\_ day of \_\_\_\_, 2011

Approved:

_____

Wilma and the Messengers Ministries


\_\_\_\_/s/Rochelle Stanton_____
Rochelle D. Stanton, Fed. Bar No. 49641MO
Attorney for Debtor in Possession
745 Old Frontenac Square, Ste. 202
Frontenac, MO  63131
(314) 991-1559 telephone
(314) 991-1183 facsimile
rstanton@rochellestanton.com

**United States Bankruptcy Court**
**Eastern District of Missouri**

In re   **WILMA AND THE MESSENGERS MINISTRIES**          Case No. _____
                                          Debtor(s)      Chapter  **11**

EXHIBITS APPENDED TO
DISCLOSURE STATEMENT DATED
AUGUST 17, 2011

Wilma and the Messengers Ministries, the Debtor, submits the following Exhibits A and B to Chapter 11 Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code:

EXHIBIT A

**HISTORICAL INCOME AND EXPENSE DATA**

The data listed below is based on historical sales and expenses listed in Debtor' Tax Returns for Calendar Tax Years 2008, 2009 and 2010.

**Historical Income and Expense Data—Buisness Income**

|  | Rental Income | Contributions | Operating Expenses & Wages | Net Profit/(Loss) |
|---|---|---|---|---|
| Tax Year 2008 | $   0 | $113,738 | ($125,888) | ($12,150) |
| Tax Year 2009 | 0 | 169,374 | ($121,077) | $48,297 |
| Tax Year 2010 | 0 | 141,470 | ($104,322) | $37,148 |

For each annual period listed above, the Profit/Loss amount includes Contributions and Offerings made by parishioners; Operating Expenses & Wages includes Office expense, cash grants paid as part of ministries, management and legal fees incurred in the daily operations of the ministry, advertisement and promotional fees, travel expenses, insurances, utilities, and other regularly recurring costs to manage the real properties. Debtor pays, on a monthly basis, wages to its Pastor, Officers, and office staff. Looking forward, it would appear that there is sufficient income to fund the Plan.

EXHIBIT B

WILMA AND THE MESSENGERS MINISTRIES

PROJECTTED INCOME AND EXPENSE DATA

|  | Gross Contributions | Rental Income | Expenses* | Excess Income Available to Creditors |
|---|---|---|---|---|
| Tax Year 2010(actual) | $141,470 | $ None | $104,322 | $ 37,148 |
| Tax Year 2111(est.) | 142,000 | 12,000 | 102,580 | $ 51,420 ($4,285 mo.) |
| Tax Year 2112(est.) | 148,000 | 12,000 | 110,000 | $ 50,000 ($4,166 mo.) |

    This Projection reflects Debtor's optimism in the strength and future growth of the Ministry. Debtor is presently renting a portion of the Church property, and the Ministry is expanding. The Pastors are receiving compensation for their services, but are prepared to reduce their compensation if necessary to assure that the expenses of the Ministry are paid, including payments due under this Chapter 13 Plan.

EXHIBIT C

PASTOR'S COMPENSATION (2010)

| | |
|---|---|
| Michael Whitfield | $ 2,750.00 |
| George Wright | $    640.00 |
| Howard Walker | $20,971.75 |
| Wilma Walker | $ 2,142.68 |